656 P.2d 148

**BOARD OF DENTISTRY, State of Idaho, ex rel. STATE of Idaho, Plaintiff-Respondent,**

v.

**Don CLARK, d/b/a Denture Center, Defendant-Counter Claimant-Appellant,**

**IDAHO ASSOCIATION OF PUBLIC DENTAL TECHNICIANS, INC., Lee Barnes, Dick Thoren, Al Lopez, John Sanders, and Frank Harris, Third Party Plaintiffs-Appellants,**

v.

**BOARD OF DENTISTRY, State of Idaho, ex rel. STATE of Idaho, Third Party Defendant-Respondent.**

No. 13406.

Court of Appeals of Idaho.

Dec. 21, 1982.

Robert C. Huntley, Jr. of Racine, Huntley & Olson, Pocatello, for defendant-counter claimant-appellant.

Stewart A. Morris of King & Morris, Boise, for plaintiff-respondent.

SWANSTROM, Judge.

The State Board of Dentistry sued in the district court to enjoin Don Clark from engaging in the practice of dentistry. Clark and the other appellants are "denturists"—technicians who make and repair dentures and dental appliances. They were alleged to be engaged in dentistry because they were performing services directly for customers, rather than working solely upon the dentures and appliances upon direction from licensed dentists.

The denturists counterclaimed seeking a declaratory judgment holding that Title 54, Chapter 9, of the Idaho Code, which defines and governs the practice of dentistry, is unconstitutional to the extent that it prohibits the practice of "denturism" by qualified denturists. After the denturists admitted they were engaging in prohibited practices, the court found there was no genuine issue of material fact and it granted summary judgment for the Board, dismissing the denturists' counterclaim and enjoining Clark from engaging in the prohibited practices.

The denturists raise these issues: (1) Were they denied substantive due process, or equal protection, by statutes which allow nondentists to work on inert matter (dentures and dental appliances) but prohibits them from coming into direct contact with patients or working on live tissue? (2) What standards of review are applied in testing the constitutionality of the statutes? (3) Are there genuine issues of material fact which should be developed and resolved at trial before the proper review standards can be applied to determine whether substantive due process or equal protection has been denied?

The State of Idaho has long recognized the independent calling of "dental technicians," persons who perform "merely mechanical work upon inert matter in a dental

laboratory." 1921 Idaho Session Laws, Chapter 255, § 11, p. 556. *See also* 1907 Idaho Session Laws, Senate Bill No. 36, § 6, p. 549. The legislature has never licensed or directly regulated dental technicians as such. However, in 1953, the legislature attempted to require all persons engaging in such work to be licensed as dentists. The legislation was challenged by certain dental technicians. In that case, *Berry v. Summers,* 76 Idaho 446, 283 P.2d 1093 (1955) (*Berry I*), the Idaho Supreme Court held:

[T]o require the dental mechanic or technician who performs [only] mechanical work upon inert matter, in a dental laboratory ... to be possessed of the education and training of a dentist and *to be licensed as a dentist* ... is not a reasonable regulation and is not reasonably necessary for the protection of the public. So far as such amendment affects, or is intended to affect such independent occupation of dental mechanic or technician in the performance of mechanical work upon inert matter in a dental laboratory, the act is unconstitutional and void.

76 Idaho at 451–52, 283 P.2d at 1096.

As a result of the *Berry I* decision, the legislature produced an amendment to the statutory definition of the practice of dentistry. In part this amendment to I.C. § 54–901 provided that engaging in any work

with respect to dental prosthetic appliances which requires or necessitates the presence, aid, assistance or cooperation of the person intended to be the user or wearer of such dental prosthetic appliance is hereby specifically defined as practicing dentistry and is not mere mechanical work upon inert matter in a dental laboratory as the term is used hereafter in this act.

1957 Idaho Session Laws, Chapter 81, § 1, p. 132.

The 1957 amendment provoked another constitutional challenge by Berry. This time he was not successful, for in *Berry v. Koehler,* 84 Idaho 170, 369 P.2d 1010 (1961) (*Berry II*) the Idaho Supreme Court upheld

the constitutionality of the amended statute and said:

> [dental technicians] may reline denture plates, repair broken denture plates, replace artificial teeth in denture plates, duplicate denture plates, and make transfers of false or artificial teeth, or any other of the mechanical services that they may desire to do.... [Provided that] the services to be performed on the appliance do not require or necessitate the presence, aid, assistance or cooperation of the wearer in the performing of such service.

84 Idaho at 180, 369 P.2d at 1015.

A further appeal, reported as *Berry v. Koehler,* 86 Idaho 225, 384 P.2d 484 (1963) (*Berry III*), did little more than reaffirm the holding in *Berry II.* Two other cases should be noted to complete the background of litigation that has preceded the present case. In *Board of Dentistry v. Barnes,* 94 Idaho 486, 491 P.2d 1258 (1971), the court declined to modify its earlier opinions in the *Berry* line of cases, and the dental technicians lost another round in their on-going battle to nullify the law that prevented them from working directly with persons using their products.

The last round occurred in *Idaho Association of Public Dental Technicians, Inc. v. Idaho Board of Dental Examiners,* 97 Idaho 631, 550 P.2d 134 (1976). In that appeal the denturists argued that the Idaho law was unconstitutional because it deprived them of property without due process of law, it deprived them of equal protection, and it was vague and overbroad. They urged that the law denied them a fundamental liberty—the practice of "denturism"—without having a substantial or reasonable relationship to the exercise of a police power, and had the effect of prohibiting an entire vocation which is not inherently harmful or dangerous to the public welfare. In response to this the court said:

> All of such contentions have been addressed and decided contrary to the position of appellants in previous opinions of this case. [Citations omitted.] We decline the suggestions of appellants that

those cases be overruled and similarly reject appellants' assertions that the personnel herein and the relief sought herein distinguish this from those previous cases.

97 Idaho at 632, 550 P.2d at 135.

Before we can evaluate the claims of the denturists in the present case, it is necessary to determine by what standards we are to test the constitutionality of the challenged law. We derive our standard of review from reading the cases we have mentioned above and also from *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976).

■ The standard of review in determining whether challenged statutes meet due process provisions of the federal and state constitutions is whether the challenged law bears "a rational relationship to the preservation and promotion of the public welfare." *Berry v. Koehler,* 84 Idaho at 177, 369 P.2d 1014; *Jones,* 97 Idaho at 866, 555 P.2d at 346. Before application of this test, those contesting the law must make a preliminary showing that the interest they claim to have and which they seek to preserve is a "cognizable liberty or property interest." *Id.* As to this threshold question, the Idaho Supreme Court has held:

> The right to follow a *recognized* occupation is a right protected by the constitutional guarantees of liberty. Fourteenth Amendment, United States Constitution; Idaho Constitution, Art. I, sec. 13. A calling may not be prohibited unless it is inherently injurious to the public health, safety or morals, or unless it has a tendency in that direction. *State v. Armstrong,* 38 Idaho 493, 225 P. 491 (1923); *State v. Fite,* 29 Idaho 463, 159 P. 1183 (1916). [Emphasis added.]

*State v. Maxfield,* 98 Idaho 356, 357, 564 P.2d 968, 969 (1977). It should be noted that in Idaho the occupation "recognized" by the legislature for at least seventy years has been that of "dental technicians" whose practice has been limited to "mechanical work merely upon inert matter in a dental laboratory." *Berry v. Summers,* 76 Idaho 446, 450, 283 P.2d 1093, 1096 (1955).

■ We next address the question of the appropriate standard of review to apply to the claim that the statutes deny appellants their right to equal protection of the laws. Appellate review on equal protection grounds must be preceded by a showing "that the statute under attack creates a discriminatory classification." *Jones,* 97 Idaho at 866, 555 P.2d at 406.

In *Idaho Association of Public Dental Technicians, Inc. v. Idaho Board of Dental Examiners, supra,* the denturists also argued that the statute was discriminatory and denied them equal protection under the law. The court agreed that the statutes do discriminate insofar as they exclude dental technicians from working on dental prosthetic appliances when such work requires the "presence, aid, assistance or cooperation" of the wearer. The court held that "[s]uch discrimination is not invalid in a constitutional framework unless it is unreasonable or rests upon grounds highly irrelevant to the achievement of some legitimate public purpose." 97 Idaho at 632, 550 P.2d at 135.

Thus, it appears that in reviewing the past claims of the denturists dealing with denial of equal protection, the Idaho Supreme Court has applied a "restrained standard of review" which has been deemed similar to the level of scrutiny applied to due process claims. Appellants have not asserted in this appeal that we should subject the offending statutes to any higher standards of review. Accordingly we will apply the same standard of review used by the Idaho Supreme Court in prior cases to evaluate the due process and equal protection claims made here. This means that the statutory classifications the legislature has created will be upheld so long as the law reasonably serves to preserve and promote the health, safety, and welfare of the public.

■ The burden of showing the unconstitutionality of a statute is upon the party asserting it. If the legislation does not clearly violate the constitution, this court must uphold it. Every reasonable presumption must be indulged in favor of the consti-

tutionality of a statute. *Caesar v. Williams,* 84 Idaho 254, 263, 371 P.2d 241, 245 (1962).

The basic argument of the denturists in this case is that, unlike the denturists in prior cases, they were prepared in the district court to submit evidence to show that the field of denturism has become a recognized, highly beneficial calling, not inherently harmful or dangerous to the public. They were never given the opportunity to fully present and develop such evidence in the district court, because the district judge granted the Board of Dentistry's motion for summary judgment. This, they assert, was error.

The denturists point to the language in the Idaho Association of *Public Dental Technicians, Inc. v. Idaho Board of Examiners, supra,* where the court said:

Here there is no showing that a reasonable basis for such regulation [prohibiting working with customers and on live tissue] does not exist, that the distinctions created by the Act are invidious or that the health and welfare of the citizens of this state do not call for this legislation. [97 Idaho at 632, 550 P.2d at 135.]

The denturists claim that at trial—had the district judge permitted them to go to trial—they would have been able to supply evidence that was lacking in the *Public Dental Technicians* case. They contend their evidence would have shown the lack of a reasonable basis for the statutory restriction against denturists working directly with their customers. Thus they argue that the disputed facts are material to the controversy, and the district judge erred in concluding otherwise.

Granting summary judgment would be proper only if the disputed facts are not material. To determine if they are material, we assume that the factual allegations made by the denturists are correct. We must also accept all reasonable inferences favorable to the denturists which flow from such facts. I.R.C.P. 56(c). Then we ask whether these facts and inferences would establish that the legislative scheme under review is unconstitutional under the re-

strained standard which focuses upon whether the scheme has a rational basis.

■ The denturists' evidence, if accepted and reviewed in the light most favorable to them, tends to establish that a properly trained, sufficiently skilled denturist, who confines his practice to the field of denturism only, and who does not engage in any diagnoses or treatment beyond the scope of that field, does not represent any threat of being "inherently injurious to the public health, safety or morals." If accepted and so viewed, their evidence also tends to show that such a denturist would provide an economical and beneficial service to the public equal to or exceeding in quality and safety the same service which now must be performed by a dentist. This evidence is disputed by the Board of Dentistry.

In *Berry v. Koehler,* 84 Idaho at 178, 369 P.2d at 1014, the court said:

> The object of such legislation is to prohibit one not specifically trained in the field of dentistry from in any way diagnosing or treating in the dental field, and to limit this field to those whom, by reason of the extensive training required for licensing, the legislature has deemed qualified under the standards established.

The proper inquiry is whether it is unreasonable, in view of the evidence offered by the denturists, exclusively to categorize the fitting and working on dental prosthetic appliances—where the presence, aid, assistance or cooperation of the customer is required—as the practice of dentistry. We think there is still a rational basis for such a classification.

Even qualified and experienced denturists have an admitted limited field of expertise in the area of dental health, care, treatment, and diagnosis. The appellants have not alleged that they have the qualifications and knowledge to promote a customer's health and welfare when confronted with the customer's oral health problems. The appellants suggest that denturists can be taught to recognize such problems and refer them to dentists or oral surgeons. Yet, in working directly with a customer there would be the constant opportunity for the denturist to prescribe, suggest or engage in some treatment or advice to the person which the denturist was not qualified to give. A customer of a denturist is likely to have questions about oral health problems and to expect professional advice from the denturist. The 1957 amendment to the statutes was designed to avoid these possibilities. In *Berry v. Koehler, supra,* the court said:

> What is the relationship of the legislation to this object? By the amendment, the legislature has raised a wall to prevent any possibility or tendency on the part of dental technicians to prescribe for the user or [sic] prosthetic appliances, or to diagnose or treat a field for which they have not been trained. The amendment further tends to avoid the possibility of an assumption by such user that he is getting anything more done for him than purely mechanical work on the appliance. In other words, the user would not likely assume that he was receiving diagnosis, prescription or treatment by one capable in those fields.
>
> Also, the amendment is designed to prohibit technicians from obtaining the aid, assistance or cooperation of the user of a prosthetic appliance in performance of mechanical work upon it, thereby to lull the user, into the false sense of security as to his dental health that reasonably could obtain if he actively participated with the technician under circumstances ending to approximate a doctor-patient situation.
>
> Thus the view of this court is that the legislation here presented is within the power and authority of the legislature to adopt, and reasonably tends to secure to the public further protection from diagnosis, prescription or treatment by unqualified practitioners, as well as protection from any sense of false security likely to be induced in those users of prosthetic appliances who are served by dental technicians.

84 Idaho at 178–79, 369 P.2d at 1014–15.

We believe that the rationale of this legislation is still valid today, as it was when

first reviewed by the Idaho Supreme Court in 1961. We cannot say that the legislature acted unreasonably in restricting the activities of denturists in order to protect the public from possible risks inherent in direct denturist-customer relationships. That competent and conscientious denturists know their limits does not entirely obviate the perceived risks associated with letting all denturists work directly with, and upon, persons seeking oral health care. The denturists' evidence, even if fully accepted, does not establish that the legislative perception of risk is devoid of any rational basis.

Admittedly, there may be other legislative schemes that would be just as reasonable as the one under review. As suggested by the denturists, such schemes would involve comprehensive legislation to license and regulate the practice of denturism, as well as further amendments regarding the practice of dentistry. We take judicial notice that during the general election in November, 1982, the electors of this state approved legislation by initiative authorizing the "Practice of Denturity"—which would include the direct customer contacts previously prohibited. Our opinion today does not contravene that initiative. Rather, our opinion reaffirms the limited scope of judicial review, upon constitutional grounds, of legislative determinations on questions of health, safety, and welfare.

We affirm the judgment of the district court. Costs to respondent, Board of Dentistry. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.