661 P.2d 770

**Alferd Murray PACKARD and Sandra Lee Weatherford (formerly Sandra Lee Packard), each individually, Plaintiffs-Appellants-Cross Respondents,**

v.

**JOINT SCHOOL DISTRICT NO. 171, a body corporate, Incorporated within the State of Idaho, Defendant-Respondent-Cross Appellant.**

No. 14172.

Court of Appeals of Idaho.

April 5, 1983.

Nicholas S. Chenoweth, Orofino, for plaintiffs-appellants, and cross-respondents.

Michael E. McNichols, Orofino, for defendant-respondent, and cross-appellant.

BURNETT, Judge.

Alferd Aftan Packard was five years old when he died. The death occurred when Alferd disembarked from a school bus and, while attempting to cross the street, was struck as the bus moved forward. The driver of the school bus later testified that her attention had been temporarily diverted, and that she did not see Alferd when she put the bus in motion.

Alferd's parents sued the school district for negligence. A jury returned a verdict of $212,500, less ten percent for comparative negligence attributed to Alferd. The trial judge further reduced the parents' recovery to $100,000—the maximum amount authorized by the Idaho Tort Claims Act. Both sides appealed.

Alferd's parents have raised two issues: (1) Does the $100,000 limitation violate their rights to due process and to equal protection of the laws? (2) Should the trial court have awarded attorney fees, in addition to the $100,000 recovery? The school district has raised these additional issues: (3) Did the trial court err by declining to instruct the jury specifically that such elements as grief and mental suffering may not be considered in awarding damages? (4) Should a new trial have been granted upon the grounds that the jury was influenced by passion or prejudice? (5) Did statutory interest on the judgment cease to run when the school district offered to settle this appeal for the amount of the judgment and interest then accrued? Both parties have also raised a final issue: (6) Should any attorney fees be awarded on appeal? For reasons set forth below, we affirm the judgment in its entirety and hold that interest on the judgment was not terminated by the settlement offer. We decline to award attorney fees on appeal.

I

Since its enactment in 1971, the Idaho Tort Claims Act has imposed a limitation of $100,000 upon recovery for personal injury to, or the wrongful death of, an individual unless the public entity carries liability insurance with greater coverage. *See* I.C. § 6–926. This limitation recently was challenged upon grounds of due process and equal protection in *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983)—a case decided during the pendency of this appeal. There, as here, a jury award exceeding the recovery limitation was reduced, and judgment was entered for the maximum recovery limit of $100,000. A majority of our Supreme Court upheld the recovery limitation against the constitutional attack.

We subscribe to the result reached in *Leliefeld,* and to the Supreme Court's disposition of the due process question. However, we believe our analysis of the equal protection issue should be separately stated. The Supreme Court's approach to equal protection in *Leliefeld* was heavily influenced by its prior decision in *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). In that case the Supreme Court outlined three alternate tests of equal protection—the "strict scrutiny" test, the "rational basis" test, and what the Court described as a new, intermediate "means focus" test. The Supreme Court's subsequent decision in *Leliefeld* rested upon a choice among these alternatives. All of the justices in *Leliefeld* agreed that the "strict scrutiny" test—which is invoked by "suspect" classifications or by infringements upon "fundamental" rights—was not applicable to the recovery limitation provision of the Idaho Tort Claims Act. Thus, the controversy in *Leliefeld* centered upon whether the "rational basis" test or the "means focus" test should be applied. The majority selected the former, and a dissenting opinion urged the latter.

The Court's earlier decision in *Jones* was a product of great scholarly effort and careful thought. However, its characterization of "means focus" as a new and different test of equal protection sowed the seeds of controversy in *Leliefeld.* Moreover, in our view, *Jones* may have unduly narrowed the "rational basis" standard of equal protection in Idaho.

In *Stucki v. Loveland,* 94 Idaho 621, 495 P.2d 571 (1972), our Supreme Court said that the "rational basis" test, under the Fourteenth Amendment to the United States Constitution, and under Art. I, § 2, of the Idaho Constitution, contains two elements. The Court said that a statutory classification will fail the "rational basis" test "[1] if it cannot be construed to reflect a reasonably conceivable, legitimate public purpose, or [2] if it fails to relate reasonably to the ascribed purpose." 94 Idaho at 623, 495 P.2d at 573. These two elements were reiterated by the Court in *State v. Cantrell,* 94 Idaho 653, 496 P.2d 276 (1972), and in *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974). The Court in *Thompson,* quoting from the United States Supreme Court decisions in *Reed v. Reed,* 404 U.S. 71, 75–77, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225 (1971), and *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 S.Ct. 989 (1920), said that a classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Thompson v. Hagan,* 96 Idaho at 21, 523 P.2d at 1367.

Against this backdrop, our Supreme Court issued its decision in *Jones.* The *Jones* opinion similarly referred to the United States Supreme Court decisions in *Reed* and *Royster Guano.* However, rather than using these cases to support and to explain the "rational basis" test—as the Court had done in Thompson v. Hagan—the Supreme Court in *Jones* elected to view these decisions as expressions of an independent, third test of equal protection—the "means focus" test. The Court said:

This new intermediate standard of equal protection review has been described as "means-focus" because it tests whether the legislative means substantially furthers some specifically identifiable legis-

lative end. [97 Idaho at 867, 555 P.2d at 407.]

The Court added that this "new" test should be applied only in cases "where the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute...." 97 Idaho at 871, 555 P.2d at 411. Nevertheless, the Supreme Court held that such a test would be applied to the particular classification at issue in *Jones* —a limitation upon recovery for medical malpractice.

As mentioned earlier, the Supreme Court in *Leliefeld* found itself divided by the dichotomy which it had created in *Jones.* The justices comprising the majority in *Leliefeld* declined to apply the "means focus" test because they did not believe that the recovery limitation under the Idaho Tort Claims Act reflected "a patent indication of a lack of relationship between the classification and the declared purpose of the statute," as required by *Jones.* A dissenting opinion suggested that if the *Jones* requirement for application of the "means focus" test had been satisfied by a limitation upon recovery for medical malpractice, it would also appear to be satisfied by a limitation upon recovery under the Idaho Tort Claims Act. None of the justices questioned the underlying dichotomy established by *Jones.*

We believe the better view is that the "rational basis" test and the "means focus" test are not conceptually separate. Rather, the "rational basis" test as set forth in *Stucki v. Loveland, supra,* in *State v. Cantrell, supra,* and in *Thompson v. Hagan, supra,* has always embraced a "means focus" element. The "rational basis" test requires not only that a statutory classification reflect a reasonably conceivable, legitimate public purpose, but also that it relate reasonably to the ascribed purpose. We read the decisions of the United States Supreme Court in *Reed v. Reed, supra,* and *F.S. Royster Guano Co. v. Virginia, supra,* not to state a different test, but to signify that the "reasonable relationship" requirement

of the "rational basis" test means that the nexus between a statutory classification and its ascribed purpose must be "fair and substantial." Our Supreme Court, at one time, intimated a similar view. *See Sterling H. Nelson & Sons, Inc. v. Bender,* 95 Idaho 813, 520 P.2d 860 (1974).

In equal protection cases decided by this court, we have recognized both elements of the "rational basis" test. In *State v. Greensweig,* 103 Idaho 50, 644 P.2d 372 (Ct.App. 1982), an equal protection attack was made upon Idaho's gender-based rape statute. We held that such a gender-based classification would be upheld "if it bears a substantial relationship to a legitimate and important state objective." *Id.* at 53, 644 P.2d at 375. In *Neveau v. Neveau,* 103 Idaho 707, 652 P.2d 655 (Ct.App.1982) Idaho's formerly gender-based alimony statute was challenged. Quoting *Orr v. Orr,* 440 U.S. 268, 279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306 (1979), we said that such a classification must serve important government objectives "and must be substantially related to achievement of those objectives." *Id.* at 709, 652 P.2d at 657. In *Board of Dentistry v. Clark,* 104 Idaho 87, 656 P.2d 148 (Ct.App. 1982), a prohibition—under then-existing law—against direct contact between "denturists" and dental patients was challenged. We held, under the "rational basis" test, that this prohibition was reasonably related to an ascribed purpose of protecting the public from receiving treatment or advice about oral health problems which "denturists" were not qualified to give.

In summary, we believe that the "rational basis" test embraces an inquiry into the relationship between a statutory classification and its ascribed purpose. Such a relationship must be "fair and substantial." In *Leliefeld* this inquiry necessarily was abbreviated. As noted above, the Supreme Court simply determined that there was no "patent indication of a lack of relationship between the classification and the declared purpose of the statute," within the meaning of *Jones.* Accordingly, the Court found no need to apply a "means focus" analysis.

In the present case, our view of the "rational basis" test mandates a fuller inquiry. Initially, we observe that the recovery limitation under the Idaho Tort Claims Act may reflect two legislative purposes: (a) providing for effective risk management by public entities and their insurers, and (b) protecting the public coffers. These are legitimate, important state objectives. The question, then, is whether the $100,000 recovery limitation bears a fair and substantial relationship to these objectives.

The first objective—risk management—does not favor any *particular* recovery limitation. Rather, it simply requires that recovery be restricted at some finite level so that risk exposure can be projected and informed underwriting decisions can be made. However, the second objective—conserving public funds—appears on its face to be directly related to the recovery limitation level selected. The greater the maximum allowable recovery, the greater annual expenditure must be made upon insurance premiums by the state and those political subdivisions, such as the school district here, which are not self-insured.

This relationship is also manifested by the record in the present case. Before Alferd Packard died, the school district had carried a liability insurance policy with coverage exceeding the requirements of the Idaho Tort Claims Act. However, during the policy period embracing the date of Alferd's death, the district had reduced its coverage to coincide with the statutory maximum. It appears that if the school district, during the year of Alferd's death, had maintained insurance coverage of $500,000 per person injured or killed—with a $1,000,000 limitation upon aggregate injuries or deaths from a single incident—the extra annual premium cost would have been $16,875. (Ironically, due to an apparent change in the economics of the insurance market, the cost for $1,000,000 "umbrella" coverage dropped to approximately $2,625 the following year.) Upon this record we are constrained to hold that a fair and substantial relationship exists in the present case, between the recovery limits prescribed by the Idaho Tort Claims Act—upon which the school district based its insurance coverage—and the legislative objective of conserving public funds.

In determining the maximum recovery level under the Idaho Tort Claims Act, and in fixing the scope of insurance coverage, the Legislature and the school district implicitly made a value judgment. They weighed the burden placed upon all taxpayers, to pay for insurance premiums, against the burden placed upon injured parties or their survivors, to forego compensation for harm beyond the scope of insurance. This case affords no constitutional basis to disturb the value judgment made by the Legislature and the school district. The result, of course, is a most unhappy one for the parents of Alferd Packard. Unfortunately, the federal and state constitutions do not afford a judicial remedy for every legislative or administrative decision which produces unhappy results.

This is not to say that we support, as a matter of policy, the recovery limitation levels presently prescribed by the Idaho Tort Claims Act. As a result of inflation, particularly during the 1970's, the real value of a $100,000 recovery in 1983 is approximately half of an equivalent recovery in 1971, when the recovery limitation was first enacted. Conversely, it may be presumed that inflation has caused the real-dollar expense of insuring against equivalent risks of loss, within the $100,000 limitation, to be less in 1983 than it was in 1971. Accordingly, we emphatically endorse our Supreme Court's observation in *Leliefeld:*

> We agree with the sentiments expressed by other courts which have urged their Legislatures to periodically review their statutory provisions which limit tort recoveries. [104 Idaho at 357, 659 P.2d 111.]

We conclude that the $100,000 recovery limitation, under the Idaho Tort Claims Act, is not unconstitutional either upon the face of the statute or as applied in this case. The judgment of the district court, awarding damages in the maximum permissible amount, will be upheld.

## II

We now turn to the question of whether the parents of Alferd Packard should have been permitted to recover attorney fees at trial. The Idaho Tort Claims Act, at I.C. § 6–918A, authorizes a discretionary award of attorney fees. However, this authority is subject to a number of restrictions, including a provision that fees may be awarded only against a party who "was guilty of bad faith in the commencement, conduct, maintenance or defense of the action." Alferd's parents have conceded that the action was not defended in "bad faith" by the school district.

■■■ It has been argued that I.C. § 12–121, which broadly authorizes a discretionary award of attorney fees "in any civil case," should be applied here. We disagree. Section 6–918A, which specifically relates to tort claims, was added to the Idaho Tort Claims Act in 1978—two years after the enactment of § 12–121 in 1976. We are not at liberty to disregard the restrictions upon award of attorney fees, in tort claim cases, imposed by § 6–918A. Neither may we give a statute an interpretation that will, in effect, nullify it; nor may we presume that the Legislature, by adding § 6–918A, performed the idle task of enacting a superfluous statute. *See, e.g., Walker v. Nationwide Fin. Corp. of Idaho,* 102 Idaho 266, 629 P.2d 662 (1981). Moreover, where two inconsistent statutes arguably apply to the same subject matter, the more specific statute controls. *E.g., Mickelsen v. City of Rexburg,* 101 Idaho 305, 612 P.2d 542 (1980). We hold that § 6–918A governs this case.

■■■ It is further contended that § 6–918A, when viewed in contrast to § 12–121, discriminates impermissibly against those tort plaintiffs whose claims lie against a governmental entity rather than against private parties. We need not dissect the due process and equal protection elements of this argument. Ordinarily, we will not review the constitutionality of a statute unless it is absolutely necessary to the decision of a case. *E.g., State v. Hightower,* 101 Idaho 749, 620 P.2d 783 (1980); *Poesy v.*

*Bunney,* 98 Idaho 258, 561 P.2d 400 (1977). In the present case, any constitutional infirmity in § 6–918A would affect the trial court's denial of attorney fees only if it were demonstrated that such fees otherwise would have been awarded under § 12–121.

■■■ The parents of Alferd Packard commenced this action on June 12, 1979. Idaho Code § 12–121, if applied to this case, would be construed in light of I.R.C.P. 54(e)(1), which became effective on March 1, 1979. This rule limits the discretionary award of attorney fees under § 12–121 to those cases where the trial court "finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation. . . ." However, the claimants here have made no showing that the school district defended this case frivolously, unreasonably or without foundation; and they made no request below that the trial court enter such a finding under Rule 54(e)(1). Our review of the record fails to disclose any substantial basis upon which such a finding could have been based. Consequently, it appears that the result concerning attorney fees at trial does not turn upon the constitutionality of § 6–918A. We decline to address the constitutional issue further. The order of the district court, denying attorney fees at trial, will not be disturbed.

## III

Next we examine issues raised by the school district. The first such issue is whether the trial court erred by refusing to instruct the jury specifically that such elements as grief and mental suffering of survivors should not be considered in awarding damages for wrongful death. This issue focuses, in part, upon the following jury instruction, in which the trial court outlined the compensable elements of damage:

> You should consider the following elements and no others ... [t]he pecuniary value of the loss of prospective comfort, care, protection, love, companionship, guidance and assistance during the com-

mon life expectancy of [the child and his parents].

The school district did not object at trial to this instruction. Neither has the school district contended on appeal that this instruction, by itself, embodied any error. Rather, the school district has argued that the trial judge erred by declining to give two supplementary instructions requested by the district. These instructions would have informed the jury that they could not "make any award of damages for the grief and anguish of the survivors," nor "any award of damages for mental suffering or for wounded feelings caused by the death of the decedent."

The trial court rejected these requested instructions upon two grounds. First, the judge stated that his instruction adequately informed the jury to consider certain elements "and no others." Secondly, the judge observed that coupling this instruction with other, negative instructions—outlining elements which should *not* be considered—would "introduce tremendous confusion" in the minds of the jurors.

Our analysis begins with the recognition that wrongful death actions are creatures of statute, authorized by I.C. §§ 5–310 and 5–311. Section 5–310 provides that parents may bring an action for the death of a child. Section 5–311 authorizes wrongful death actions involving other classes of decedents. Section 5–311 further provides that, "[i]n every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

Our Supreme Court recently noted, in *Gavica v. Hanson,* 101 Idaho 58, 61, 608 P.2d 861, 864 (1980), that "the precise boundaries of damages allowable under the statute have never been completely delineated." What delineation now exists may be traced largely to *Wyland v. Twin Falls Canal Co.,* 48 Idaho 789, 285 P. 676 (1930). In that case, our Supreme Court held that "just" damages under the statute included the value of a decedent's services in the care of his family and in the education of his children. The Court also referred, in dictum, to cases

from other jurisdictions, construing substantially similar statutes to allow recovery for loss of companionship, protection, bodily care, intellectual culture, and moral training—but not for mental suffering or wounded feelings caused by the death of the deceased. 48 Idaho at 796, 285 P. at 678.

This dictum subsequently was cited by the Supreme Court in *Hepp v. Ader,* 64 Idaho 240, 130 P.2d 859 (1942). The Court in *Ader,* apparently treating the *Wyland* dictum as settled law in Idaho, stated:

> Although the decisions are agreed that recovery may not be had for grief and anguish suffered by the surviving relatives of the deceased, it may be had, in Idaho, for loss of society, companionship, comfort, protection, guidance, advice, intellectual training, etc. [64 Idaho at 245, 130 P.2d at 862.]

The preclusion against recovery for grief and anguish was reiterated in *Checketts v. Bowman,* 70 Idaho 463, 220 P.2d 682 (1950), *overruled on other grounds, Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972), in *Gavica v. Hanson, supra,* and most recently in *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11 (1982).

The foregoing summary of Idaho authority discloses that exclusion of survivors' grief and mental anguish from the elements of "just" damages, under our statutes, has not been critically examined. It is the product of a dictum preserved through the decades by a series of cursory and passing references. More importantly, in none of the cases cited has it been held, or even suggested, that a jury must be given a prohibitory instruction—specifically informing them that they shall not make any award for grief, mental anguish, or like elements.

When the present case was tried, in 1980, the Idaho Jury Instructions recommended by our Supreme Court contained no reference to grief or mental anguish. Rather, at that time, IDJI 911 simply referred to other, permissible elements of recovery. However, in 1982, after this case had been tried but while the appeal was pending, the Su-

preme Court issued a revised volume of pattern jury instructions. The new IDJI 911–1 presently contains a specific directive that the jury not award damages "for any grief or sorrow that the plaintiff may have suffered by reason of the . . . death of the decedent . . . ." The school district in this case now urges us to hold that the instruction given to the jury was incomplete, constituting reversible error and necessitating a new trial.

Although the instruction given by the trial judge differs from the pattern instruction later recommended by the Supreme Court, it does not necessarily follow that the trial judge's instruction was erroneous. Pattern jury instructions are not a separate source of substantive law; rather, they seek to embody existing law. They are recommendatory in nature, not mandatory. I.R.C.P. 51(a)(2). Thus, the substantive standard by which the jury instruction in this case should be judged is not a subsequently promulgated pattern instruction, but the underlying case law. As noted above, we find nothing in prior decisions of the Idaho Supreme Court indicating that an instruction such as the one given here should be held fatally defective for incompleteness.

In any event, even if error were deemed to exist, a party attacking a jury instruction must also demonstrate prejudice. *E.g., Annau v. Schutte,* 96 Idaho 704, 535 P.2d 1095 (1975); *Morrison v. Pierce,* 47 Idaho 430, 276 P. 306 (1929). The school district in this case has made no affirmative showing that the jury went beyond the trial judge's instruction and improperly considered such elements as grief or mental anguish. In the absence of such a showing, and where the jury instructions are clear, an appellate court will presume that the jurors have heeded the instructions given by the trial court. *Mattson v. Bryan,* 92 Idaho 587, 448 P.2d 201 (1968). Moreover, the record before us reveals no testimony specifically concerning grief or mental anguish, nor any arguments of counsel urging recovery for such factors. We conclude that the trial court did not commit reversible error by refusing to give the supplementary instructions requested by the school district.

## IV

Next we consider the school district's assertion that the trial judge erred by denying a motion for a new trial urged upon the ground that the jury's verdict of $212,500, was excessive. The motion was based upon I.R.C.P. 59(a)(5), which provides in part that a new trial "may be granted" for "[e]xcessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice." On appeal, the school district argues that although the recovery later was reduced to $100,000, the alleged "passion or prejudice" demonstrated by the damage award also infected the jury's determination of liability.

The school district concedes there are no objective circumstances, portrayed in the record, to indicate such passion or prejudice. However, this concession alone does not dispose of the issue on appeal. In *Dinneen v. Finch,* 100 Idaho 620, 624–25, 603 P.2d 575, 579–80 (1979), our Supreme Court enunciated the general standard governing appellate review of rulings on Rule 59(a)(5) motions:

[I]t is not required that the movant must be able to point to the record of proceedings and demonstrate some occurrence which created jury passion or prejudice. . . . A trial court in a jury trial hears exactly the same evidence as the jury hears, and makes his own inward assessments of credibility and weight. So, when after a trial the jury returns a verdict which is thereafter assailed, either as excessive or as inadequate, the trial court's judgment is then called into play, requiring of him a *weighing* of the evidence. The sole question on a Rule 59(a)(5) motion is the amount of the jury's damage award, as compared to the amount of damages the trial court on his view of the evidence would have awarded. [Emphasis original.]

In this case, the trial judge found the verdict to be "in keeping with the circum-

"stances of the case and the evidence presented...." The judge further observed that had he tried the case without the benefit of a jury, he "would not have determined damages to be in a lesser amount than that rendered by the jury." In reviewing such a determination on appeal, we must be mindful that the trial court "has a far better opportunity to weigh the demeanor, credibility, and testimony of witnesses, and the persuasiveness of all the evidence.... [T]he power of ... [an appellate court] over excessive or inadequate damages exists only when the facts are such that the excess or inadequacy appears as a matter of law." Dinneen v. Finch, supra, 100 Idaho at 626, 603 P.2d at 581.

[black bar] There is no special, discrete limitation as a matter of law upon recovery for the wrongful death of a child. Meissner v. Smith, supra. Rather, our review turns more generally upon whether the amount of the verdict, by itself, would "suggest bias, passion or prejudice on the part of the jury." Barlow v. International Harvester Co., 95 Idaho 881, 898, 522 P.2d 1102, 1119 (1974). No such suggestion arises from our review of the record in this case. We hold that the trial judge acted within his sound discretion by denying the school district's motion for a new trial upon the grounds of an excessive verdict.

The last issue raised by the school district is whether a settlement offer, made during the pendency of this appeal, terminated the running of statutory interest on the judgment. The facts framing this issue are that the parents appealed this judgment, for reasons discussed earlier in this opinion, and the school district then cross-appealed. While this mutual appeal was pending, there were communications regarding settlement. Ultimately, the school district offered in writing to dismiss its cross-appeal, and to pay the amount of the judgment entered by the trial court together with costs (exclusive of attorney fees) and statutory interest then accrued, if Alferd's par-

stances of the case and the evidence presented...." The judge further observed that had he tried the ·case without the benefit of a jury, he "would not have determined damages to be in a lesser amount than that rendered by the jury." In reviewing such a determination on appeal, we must be mindful that the trial court "has a far better opportunity to weigh the demeanor, credibility, and testimony of witnesses, and the persuasiveness of all the evidence.... [T]he power of ... [an appellate court] over excessive or inadequate damages exists only when the facts are such that the excess or inadequacy appears as a matter of law." *Dinneen v. Finch, supra,* 100 Idaho at 626, 603 P.2d at 581.

There is no special, discrete limitation as a matter of law upon recovery for the wrongful death of a child. *Meissner v. Smith, supra.* Rather, our review turns more generally upon whether the amount of the verdict, by itself, would "suggest bias, passion or prejudice on the part of the jury." *Barlow v. International Harvester Co.,* 95 Idaho 881, 898, 522 P.2d 1102, 1119 (1974). No such suggestion arises from our review of the record in this case. We hold that the trial judge acted within his sound discretion by denying the school district's motion for a new trial upon the grounds of an excessive verdict.

### V

The last issue raised by the school district is whether a settlement offer, made during the pendency of this appeal, terminated the running of statutory interest on the judgment. The facts framing this issue are that the parents appealed this judgment, for reasons discussed earlier in this opinion, and the school district then cross-appealed. While this mutual appeal was pending, there were communications regarding settlement. Ultimately, the school district offered in writing to dismiss its cross-appeal, and to pay the amount of the judgment entered by the trial court together with costs (exclusive of attorney fees) and statutory interest then accrued, if Alferd's parents would dismiss their appeal. The offer was declined.

The school district now contends that it should not be "penalized" by the continued running of statutory interest if the judgment is affirmed on appeal. We believe the school district's argument misapprehends the underlying purpose of interest upon judgments. Interest is a charge for use of money, not for use of the judicial system. When payment of a judgment is deferred, as a result of an appeal, an asymmetrical relationship develops between the litigants. The judgment creditor has an entitlement to money, subject to appellate review, but does not have the money itself. The judgment debtor has an obligation coextensive with the creditor's entitlement, but retains the use of the money. The pecuniary value of delay in satisfying the judgment is represented by the debtor's potential rate of return upon investment of funds. This lack of symmetry exists regardless of which party has appealed, or the motive underlying the appeal.

Accrual of interest upon a judgment, until it is actually paid, brings greater symmetry to the relationship between the litigants. If the judgment is upheld, an amount approximating the debtor's potential rate of return is passed on to the judgment creditor, to compensate for lack of use of the funds during the pendency of the appeal. Conversely, if the judgment is reversed, and the debtor is determined not to owe any obligation to the creditor, then the debtor retains the benefit of continued use of the funds. Thus, in concept, interest on a judgment does not represent either a reward or a penalty to either party.

Of course, in practice, the symmetry created by judgment interest is not perfect. The statutory interest rate, set from time to time by the Legislature, may lag behind the trends of money markets. Indeed, in the present case, the school district has argued that judgment interest at 18% per annum, as currently provided by I.C. § 28–22–104(2), exceeds the internal rate of return realized by the district's insurance company upon funds which ultimately

would be used to pay the judgment. However, we have been furnished no factual record upon which to test this assertion. In any event, the problem created by an imprecise relationship between statutory interest on judgments and rates of interest prevalent in money markets is for the Legislature, not for the courts, to resolve.

 Accordingly, we hold that a conditional offer of settlement during pendency of an appeal, which results in no actual transfer of funds from the judgment debtor to the judgment creditor, does not terminate the running of statutory interest upon the judgment. This holding is consistent with the principle that payment of a judgment by the judgment debtor will terminate the creditor's right to statutory interest only if payment is tendered unconditionally and without prejudice to the judgment creditor's right to appeal. *See, e.g., Farnsworth v. Steiner,* 638 P.2d 181 (Alaska 1981); *Welch v. McClure,* 123 Ariz. 161, 598 P.2d 980 (Ariz.1979); *Certified Corp. v. Market Center, Ltd.,* 51 Haw. 121, 452 P.2d 442 (Haw.1969). The school district's offer in this case did not result in actual transfer of funds to Alferd's parents. The offer was conditional, rather than unconditional; and it expressly provided that acceptance would prejudice the parents' right to pursue their appeal. We conclude that Alferd's parents are entitled to statutory interest, without interruption, upon the judgment entered by the district court.

## VI

 Finally, both parties have asked us to decide whether attorney fees should be awarded on appeal. This issue echoes the question, examined earlier, concerning denial of attorney fees at trial. Assuming, without deciding, that neither party would be entitled to recover attorney fees on appeal unless the opposing party had exhibited "bad faith" within the meaning of I.C. § 6–918A, we believe no award could be made. This appeal has been free of bad faith.

Alternatively, assuming that an award could be made to either party under I.C. § 12–121, we confront the question of whether either party has "prevailed" within the meaning of that statute. The judgment from which both sides appealed has been upheld in its entirety. None of the relief sought has been obtained. A similar circumstance confronted us in *Viehweg v. Thompson,* 103 Idaho 265, 647 P.2d 311 (Ct. App.1982). On that occasion we observed:

> [B]oth parties have chosen the role of appellant, and neither has prevailed in that role. Accordingly, we decline to award any attorney fees or costs on appeal. [103 Idaho at 273, 647 P.2d at 319.]

We conclude that the same result is appropriate in the present case.

The judgment of the district court is affirmed. No costs or attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.