## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 47684

|  |  |  |
|---|---|---|
| | ) | |
| **TERRY ASHER and PAMELA KITCHENS,** <br> **husband and wife,** | ) <br> ) <br> ) | **Boise, November 2020 Term** |
| Plaintiffs-Respondents, | ) <br> ) | |
| v. | ) <br> ) | **Opinion Filed: February 9, 2021** |
| **LESTER MCMILLAN,** | ) <br> ) | **Melanie Gagnepain, Clerk** |
| Defendant-Appellant. | ) <br> ) <br> ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Gem County. George A. Southworth, District Judge.

The decision of the district court is <u>affirmed</u> in part and <u>remanded</u> for entry of a reduced award.

Jones & Swartz, PLLC, Boise, for Appellant. Eric B. Swartz argued.

William F. Lee, Emmett, for Respondents.

———————————

BRODY, Justice,

This case involves an award of restitution for improvements to a defendant's real property made by plaintiffs while the parties were anticipating a conveyance. Lester McMillan bought a dilapidated house that Terry Asher and Pamela Kitchens ("the Ashers") planned to repair. The parties orally agreed that the Ashers would perform certain repairs to make the house livable, rent the house from McMillan for five years, and then buy the house from McMillan. For reasons that are disputed, the sale was never consummated. However, the Ashers continued to live in the house, make improvements to the property, and pay monthly rent to McMillan. After relations between the parties soured, McMillan sued to evict the Ashers. The Ashers then sued McMillan for specific performance of the oral contract to convey or, in the alternative, restitution

1

for the value of the improvements. The district court found the oral contract was unenforceable, but awarded the Ashers restitution for certain improvements. McMillan appeals, alleging the district court erred in determining that he was unjustly enriched and in determining the amount of restitution. We hold that the district court did not err, except for a minor miscalculation of the amount of restitution.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Terry Asher and Pamela Kitchens found a dilapidated house for sale that they wished to repair and live in. The house was uninhabitable due to water damage and severe mold infestation, but Terry Asher had experience in renovation work in general, and mold remediation in particular. Because the Ashers lacked the means to buy the house, they approached their friend Lester McMillan, with whom Terry Asher had partnered in the past, to buy and repair discounted items to sell at a profit.

The parties reached an oral agreement that McMillan would purchase the house, repair the roof, replace the drywall, and perform some other initial repairs. In exchange, the Ashers agreed to rent the house from McMillan for five years before purchasing it from him. Terry Asher testified that the purchase price was to be equivalent to McMillan's investment, i.e., the purchase price in 2009, plus the cost of initial repairs performed by McMillan. McMillan's testimony on price is ambiguous, but the district court found the parties had failed to agree on terms of sale.

After the initial repairs by McMillan and mold remediation by the Ashers, the Ashers moved into the house and began paying rent. They also made substantial improvements, which included replacing appliances, refinishing cabinets, making electrical and plumbing repairs, and planting trees. The Ashers do not dispute they made these improvements without McMillan's request, without seeking his approval, and without an expectation of reimbursement. Rather, the Ashers testified they made the improvements with the expectation of ownership.

The parties disagree about what happened after the five-year period ended. Terry Asher testified that he approached McMillan to go through with the sale, but that McMillan refused to give him a price. Asher believed McMillan had spent about $63,000 to purchase the house and $7,000 to complete initial repairs, but he was uncertain of the exact numbers. Because they were friends and McMillan was struggling with medical and personal difficulties, Asher testified he did not press the issue, but simply continued to pay rent. By contrast, McMillan claims he was

the one who approached Asher, and that Asher told him he could not buy the house because of credit trouble. McMillan claims he called off the agreement when Asher told him he could not perform. Over the next few years, the friendship between the Ashers and McMillan fell apart. Terry Asher approached McMillan again in 2017 or 2018, but McMillan refused to sell the house. In late 2018, McMillan served the Ashers with a thirty-day notice to vacate, and on February 6, 2019, McMillan filed an unlawful detainer action against the Ashers.

The Ashers answered the unlawful detainer complaint and filed a separate complaint against McMillan seeking specific performance to sell the house, or, in the alternative, an award of contract damages or restitution. The Ashers argued for damages under a theory of breach of the implied covenant of good faith and fair dealing, and restitution under theories of quantum meruit and unjust enrichment.

The district court held a bench trial on October 8, 2019, at which the parties offered testimony on their agreement and dealings. The Ashers also offered two exhibits for admission into evidence. Exhibit 1 consisted of a receipt for electrical supplies, an invoice for the removal of a dead tree, a handwritten estimate of the value of several trees planted by the Ashers, and a statement from a drywall installer indicating he had received two four-wheelers from the Ashers in exchange for work done in the house. Exhibit 2 consisted of a list of improvements by the Ashers and the purported cost of performing that work. Both exhibits were admitted into evidence without objection from McMillan.

The district court issued its findings of fact and conclusions of law on November 14, 2019. The district court denied the Ashers' claim for specific performance. The court determined that even under the partial performance exception to the statute of frauds, the oral agreement was unenforceable for a lack of definite terms. Further, because the parties never agreed on an extension of the agreement to sell, there was no contract to support the claim for breach of the covenant of good faith and fair dealing. Rather, the district court found that from 2014 onward, the only agreement between the parties was a month-to-month lease of the house. As to the quantum meruit claim, the Court determined that McMillan had never requested any of the improvements, and, therefore, there was no implied-in-fact contract to support the claim.

However, the district court ruled in favor of the Ashers on their claim for unjust enrichment. After a general statement of the elements of an unjust enrichment claim, the district court ruled:

The [c]ourt does find, however, that McMillan received a benefit from—and was unjustly enriched by—Asher's improvements. McMillan benefitted from the improvements Asher made and it would be inequitable for McMillan to retain them without payment to Asher.

McMillan did not dispute Asher's testimony or the admitted exhibits that alleged the value of the improvements. The mold remediation, new appliances, new well pump and motor, new irrigation pump, re-surfaced kitchen cabinets, and the new shade trees all benefit McMillan, and it would be inequitable for him to retain them without payment of their value.

As to the amount of unjust enrichment, the district court ruled: "Based on Asher's testimony to the cost of typical mold remediation for $40,000, and the receipts submitted for the trees, electrical supplies, tree removal, and wall texturing, Asher is entitled to damages in the amount of $48,748.20." The court entered judgment against McMillan for this amount.

McMillan filed a motion for reconsideration and to amend the district court's findings. McMillan argued that the district court erred in finding McMillan had been unjustly enriched, erred in measuring the award of restitution by the cost of the improvements rather than their value, and erred in awarding restitution not supported by the evidence.

The district court denied McMillan's motion and issued an order that explained its reasoning in substantially greater detail than the original findings of fact and conclusions of law. In particular, the district court clarified it would be unjust for McMillan to retain the improvements without paying for them because the improvements were not made as a gift, the Ashers anticipated owning the property after five years, and McMillan was aware of the improvements and did not object. Further, the district court agreed with McMillan that value, rather than cost, was the proper measure of unjust enrichment damages, but noted that costs may be credible evidence of value. The court noted that several parties testified the house was worth less than $100,000 when purchased by McMillan, and that Terry Asher testified the house was worth as much as $300,000 at the time of trial. The court found this "evidence was sufficient to show . . . that the value of the property has [been] enhanced significantly because of the improvements and its now livable state." Further, the court stated it relied upon the evidence provided by the Ashers, and found it was credible to prove the value of the improvements. McMillan timely appealed.

## II.     STANDARD OF REVIEW

"This Court reviews rulings on equitable remedies for an abuse of discretion."

*Wadsworth Reese, PLLC v. Siddoway & Co., PC*, 165 Idaho 364, 372, 445 P.3d 1090, 1098 (2019). This Court's four-prong abuse of discretion analysis asks "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

"The question of the proper measure of damages is a question of law which is reviewed *de novo*." *Gen. Auto Parts Co. v. Genuine Parts Co.*, 132 Idaho 849, 854, 979 P.2d 1207, 1212 (1999). "The findings of the trial court on the question of damages will not be set aside when based on substantial and competent evidence." *Trilogy Network Sys., Inc. v. Johnson*, 144 Idaho 844, 846, 172 P.3d 1119, 1121 (2007). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Turcott v. Estate of Bates*, 165 Idaho 183, 188, 443 P.3d 197, 202 (2019).

## III. ANALYSIS

### A. The district court did not err in determining that McMillan would be unjustly enriched by retaining the Ashers' improvements to the house without paying restitution.

McMillan alleges the district court erred in determining he was unjustly enriched by the Ashers' improvements. McMillan's basic argument is that the district court erred in awarding restitution because the parties formed a contract to convey the property. He presents this argument in two ways. First, McMillan asserts that the district court erred in applying the holdings in *Hertz v. Fiscus*, 98 Idaho 456, 567 P.2d 1 (1977) and *Haskin v. Glass*, 102 Idaho 785, 640 P.2d 1186 (Ct. App. 1982), to this case. McMillan acknowledges these cases provide an exception to the common law rule that a tenant cannot recover for improvements made to a landlord's property absent an agreement to reimburse, but he maintains the decisions have no application where the parties have first formed a contract to convey. Second, McMillan argues that because the Ashers did not negotiate for reimbursements, they accepted the risk of losing their value and seeking restitution renders Ashers "officious intermeddlers," thrusting the repairs and improvements upon McMillan. We disagree.

The decision of the district court has a firm foundation in the law of unjust enrichment. Section 27 of the Restatement of Restitution and Unjust Enrichment, provides:

If the claimant makes expenditures to maintain, improve, or add value to property

that the claimant reasonably expects to retain or to acquire, and (because such expectation is frustrated) another person becomes the unintended beneficiary of the claimant's expenditure, the claimant is entitled to restitution from the other as necessary to prevent unjust enrichment.

Restatement (Third) of Restitution and Unjust Enrichment § 27 (2011). The decisions in *Hertz* and *Haskin* reflect this principle and are applicable to this case.

In *Hertz*, the defendants owned an inn, which they leased to a third party. *Hertz*, 98 Idaho at 456–57, 567 P.2d at 2–3. After the plaintiff bought out the third party's interest, he began making improvements to the inn with the owners' knowledge and consent. *Id.* at 457, 567 P.2d at 3. While the plaintiff was making improvements, the parties attempted to negotiate a new lease, but they did not reach an agreement and their relationship soured. *Id.* When the plaintiff stopped paying rent, the owners notified the plaintiff to vacate the premises. *Id.* After he did so, the plaintiff brought an action in unjust enrichment for the value of his improvements. *Id.* The trial court awarded restitution to the plaintiff for the value of the improvements, and this Court affirmed, noting that there was no indication the improvements were intended as a gift and that the defendants knew of and consented to the work. *Id.*

In *Haskin*, the plaintiffs lived on a property they rented from the defendants. *Haskin*, 102 Idaho at 787, 640 P.2d at 1188. The renters were interested in purchasing the property and the parties exchanged proposed terms of sale. *Id.* While the parties were negotiating, the renters performed some landscaping work. *Id.* at 789, 640 P.2d at 1190. The owners were aware of the work and did not object. *Id.* However, negotiations broke down, the renters stopped paying rent, and the owners filed an unlawful detainer action against them. *Id*. at 787, 640 P.2d at 1189. The renters counterclaimed in the unlawful detainer action, including an unjust enrichment claim for the value of the landscaping work. *Id.* The trial court found for the renters on their unjust enrichment claim, and the Court of Appeals affirmed. *Id.* at 789, 640 P.2d at 1190. Though the owners argued that, absent an agreement, tenants cannot recover for improvements to leased property, the Court of Appeals cited to *Hertz* to note that an equitable exception exists to this rule. *Id.* at 788, 640 P.2d at 1189. Because the renters did not intend the landscaping work to be a gift, the work "was done when the parties were mutually contemplating a conveyance," and the owners did not object, the court found the owners would be unjustly enriched unless they paid for the value of the landscaping work. *Id.*

Here, the district court rejected McMillan's argument that the Ashers were "mere

tenants" subject to the common law rule that tenants may not recover for improvements to property without an agreement to reimburse. Rather, the district court found that the improvements were made while the parties were mutually contemplating a conveyance, that the conveyance failed to materialize, that McMillan was aware of most of the improvements, and that he never objected to any improvements. Thus, the district court determined that McMillan would be unjustly enriched if he were to retain the improvements without paying their value. We see no error in this determination.

Throughout his arguments, McMillan repeats that the district court found he and the Ashers had formed a contract to convey, and that the Ashers had no right to, nor expectation of, reimbursement for their improvements under the contract. Therefore, McMillan asserts the Ashers' forfeiture of the value of their improvements is simply the consequence of their contractual dealings. However, McMillan's arguments do not account for the findings of the district court and they seem to misunderstand the relationship between contracts and the equitable remedy of restitution. First, McMillan argues that the district court found the Ashers were at fault for the failure of the sale to materialize. McMillan claims: "the [t]rial [c]ourt found that McMillan did honor the agreement, and that it was Ashers who chose not to proceed with the purchase of the house." No plausible reading of the district court's findings of fact and conclusions of law supports McMillan's contention. In fact, the district court did not determine which party had failed to perform under the contract; it simply denied the Ashers' contractual claims because the contract to convey the property was unenforceable. Second, McMillan's arguments do not acknowledge the unenforceability of the contract. Instead, McMillan's arguments seem to erroneously assume that the mere formation of the contract put the case beyond the reach of an equitable remedy.

The law of contracts and the law of restitution are separate bodies of law addressing separate concerns. In contract cases, the aim is to give effect to the intention of the parties as manifested in their agreement. *Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 717, 435 P.3d 489, 497 (2019). In restitution cases, the aim is to provide a remedy where one party has conferred a benefit on another which it would be unjust to retain. *Turcott*, 165 Idaho at 190, 443 P.3d at 204. Thus, we have said "unjust enrichment is the measure of recovery under a *contract implied-in-law*, which 'is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent of the

7

agreement of the parties, and, in some cases, in spite of an agreement between the parties.'" *Id.* (quoting *Barry v. Pac. W. Const., Inc.*, 140 Idaho 827, 834, 103 P.3d 440, 447 (2004) (emphasis in original)). To the extent McMillan argues that contracts oust equitable remedies, he is mistaken.

However, McMillan is correct to the extent he argues that restitutionary remedies are subordinate to contractual remedies. Despite the sweeping ring of the phrase "unjust enrichment," restitution is not due simply because a transaction seems unfair, unwise, or unbalanced. Rather, unjust enrichment is an "enrichment that lacks an adequate legal basis; it results from a transaction that the law treats as ineffective to work a conclusive alteration in ownership rights." Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b (2011). Thus, in the ordinary case, a contract displaces a remedy in restitution because the contract provides an "adequate legal basis" for the retention of a benefit conferred. *See* Restatement (Third) of Restitution and Unjust Enrichment § 2(2). However, this is only true of *enforceable* contracts; an unenforceable contract does not conclusively alter ownership rights and it provides no basis to displace a remedy in restitution. *Bates v. Seldin*, 146 Idaho 772, 776–777, 203 P.3d 702, 706–707 (2009). Therefore, where a plaintiff has conferred a benefit under a contract that he or she cannot enforce—whether because of a defect in formation, non-compliance with the statute of frauds, avoidance after formation, or even because the plaintiff is in breach—the question is not whether a contract existed but whether the defendant's retention of the benefit would be unjust. Restatement (Third) of Restitution and Unjust Enrichment §§ 31–36 (2011).

Relevant to this question, McMillan's only argument is that he did not ask the Ashers to perform any of the improvements to the house. McMillan cites *Curtis v. Beeker*, 130 Idaho 378, 941 P.2d 350 (Ct. App. 1997), for the proposition that "Idaho's officious intermeddler rule prohibits restitution to a person who confers a benefit without being solicited to do so." *Id.* at 382, 941 P.2d at 354. However, this statement is too broad because even where a benefit is conferred without solicitation, a person is not an "officious intermeddler" where the benefit is conferred for a "valid reason." *See, e.g.*, *Kenworth Sales Co. v. Skinner Trucking, Inc.*, 165 Idaho 938, 945, 454 P.3d 580, 587 (2019) (stating that a claimant may recover in restitution if a benefit is conferred for a valid reason, but denying recovery because plaintiff's interest was "too attenuated" to be a valid reason to hold defendant liable).

The Restatement lists ten commonly recurring situations in which unrequested benefits

may form the foundation for an award of restitution—including improvement of another's property with the expectation of ownership, as discussed above. Restatement (Third) of Restitution and Unjust Enrichment §§ 20–29 (2011). Here, the district court expressly rejected McMillan's argument that the Ashers were officious intermeddlers and found that "[a]lthough McMillan never specifically asked for the improvements, [the] Asher[s] had a valid reason to confer the benefit—the improvements were made in contemplation that [the Ashers] would own the property after five years."

Indeed, in making his arguments, McMillan concedes that the Ashers had a valid reason to make the improvements, at least as to those made before the five-year period ended in 2014. McMillan makes this concession while arguing that the district court erred to award restitution for two improvements made after the five-year period—$648.21 for electrical improvements and $900 for the removal of a tree. McMillan asserts "*[w]hile Ashers certainly had a valid reason to make the house liveable at their cost as part of the agreement with McMillan . . .* there was [] no valid reason to make repairs after the five-year agreement terminated." McMillan's concession conclusively disposes of his officious intermeddler argument for repairs made during the five-year period. As to his argument regarding the two repairs made after that period, we are not persuaded.

McMillan asserts that "the [t]rial [c]ourt expressly found that that [sic] McMillan called the deal off at the end of the five-year term and that Ashers were mere tenants." However, contrary to McMillan's assertion, the district court never made a finding of when the Ashers' reasonable expectation of ownership ended such that they became "mere tenants." While the district court noted that McMillan testified he told Terry Asher the deal was off after five years, it never expressly credited this testimony and conflicting testimony from the Ashers suggested they believed the agreement to sell was valid until McMillan sued to evict them.

Despite the lack of an express finding, we can infer from the district court's findings that the Ashers were not "mere tenants" when they made the electrical improvements and removed the tree. The district court's determination that the Ashers were not officious intermeddlers was based not only upon the contract between the parties, but also upon the nature of the improvements themselves. Specifically, the district court found that the Ashers' expectation of ownership was demonstrated by repairs that were "beyond what mere tenants typically make to a rental property." Because electrical improvements and tree removal are beyond the repairs

9

typically undertaken by "mere tenants," we will not upset the district court's award of restitution for these improvements. *Reding v. Reding*, 141 Idaho 369, 372, 109 P.3d 1111, 1114 (2005) ("A trial judge's findings of fact in a court-tried case will be liberally construed on appeal in favor of the judgment entered, in view of the trial judge's role as trier of fact.").

In light of *Hertz*, *Haskin*, and the Restatement, the facts in the record support the district court's determination that McMillan would be unjustly enriched if he were to retain the Ashers' improvements without paying for their value. The district court did not abuse its discretion in awarding restitution to the Ashers.

## B. The district court did not err in relying on the Ashers' costs to determine the value of the improvements to McMillan.

McMillan argues the district court erred in measuring the award of restitution against him. Specifically, McMillan alleges that the district court erred in relying on the Ashers' costs in making improvements. McMillan points to the following statement of the district court in its findings of fact and conclusions of law to demonstrate the alleged error: "Based on Asher's testimony to the cost of typical mold remediation for $40,000, and the receipts submitted for the trees, electrical supplies, tree removal, and wall texturing, [the Ashers are] entitled to damages in the amount of $48,748.20."

McMillan is correct that the focus of a restitution award is the value of the benefit it would be unjust for the defendant to retain, rather than the cost to the plaintiff in conferring the benefit. *Turcott v. Estate of Bates*, 165 Idaho 183, 190, 443 P.3d 197, 204 (2019). However, in its order denying McMillan's motion to reconsider the award, the district court explained that it correctly understood that the value of the improvements to McMillan was the proper measure of recovery and it noted that costs may be competent evidence of the value under the rule in *Dursteler v. Dursteler*, 108 Idaho 230, 235, 697 P.2d 1244, 1249 (Ct. App. 1985). Thus, it declined to disturb its award. We hold the district court did not err in determining the amount of the award.

Before today, this Court has not passed on the question of whether costs to a plaintiff may be used to measure the value of defendant's unjust enrichment. However, the Court of Appeals approved costs as competent evidence of value in *Dursteler*, and we agree with the Court of Appeals' reasoning. We also note this is consistent with the Restatement.

Where a defendant has been enriched by a benefit that is nonreturnable (e.g., services rendered or improvements to real estate), the Restatement provides four methods of valuation

that may be used as the availability of evidence allows: "(a) the value of the benefit in advancing the purposes of the defendant, (b) the cost to the claimant of conferring the benefit, (c) the market value of the benefit, or (d) a price the defendant has expressed a willingness to pay . . . ." Restatement (Third) of Restitution and Unjust Enrichment § 49(3) (2011). In cases of improvements to real estate in particular, "benefit is sometimes equated with cost, where benefit is difficult to measure directly and cost makes a reasonable proxy." Restatement (Third) of Restitution and Unjust Enrichment § 27 cmt. c (2011). Thus, "restitution for necessary repairs to defendant's property while in the claimant's possession will ordinarily be measured by the cost reasonably incurred." *Id.*

Additionally, we note that "the measure of enrichment may reflect the court's assignment of blame for the fact that the underlying transaction has miscarried." *Id.* Thus, the court may select a measure providing greater recovery for a plaintiff if it finds that the defendant bears primary responsibility for the failure of the transaction, while "restitution of expenditures made in reliance on contract-based expectations may be denied altogether" if the transaction fails due to the plaintiff's default. *Id.* Here, the evidence in the record is conflicting as to which party bore responsibility for the failure to consummate the sale, and the district court made no determination on this issue. Therefore, we assume that the default rule applies in this case: that liability in restitution is the lesser of the cost incurred by the plaintiff and the value conferred on the defendant. *See* Restatement (Third) of Restitution and Unjust Enrichment § 10 cmt. h (2011).

In McMillan's first argument regarding the measure of restitution, he concedes that "[t]he [t]rial [c]ourt's reliance on cost of labor and materials may be evidence of the value received by McMillan," but then alleges that "the [t]rial [c]ourt did not go on to the next step to determine the measure of unjust enrichment damages." However, McMillan does not explain why an additional step was required after identifying the improvements and their costs, or what that step might entail. Furthermore, *Hartwell Corp. v. Smith*, 107 Idaho 134, 686 P.2d 79 (Ct. App. 1984), the authority McMillan cites for the proposition that an extra step was required, is plainly distinguishable.

In *Hartwell*, an insurance company employee's paychecks included a portion paying his salary and a portion paying advances on commissions. *Id.* at 137, 686 P.2d at 82. Over a period of eight-and-a-half months, the employee did not earn enough commissions to cover the advances and he became indebted to the company. *Id.* After the employee left the company, he

11

did not repay the debt and the company sued. *Id.* The employee counterclaimed, alleging the company had been unjustly enriched by not paying for the reasonable value of his work. *Id.* The jury found the company had been unjustly enriched and awarded the employee the total sum that the evidence showed his earnings should have been over the eight-and-a-half months. *Id.* at 140–42, 686 P.2d at 85–87. However, the Court of Appeals noted that this was not the proper measure of the company's unjust enrichment because the award did not include an offset for the salary already paid to the employee. *Id.* In other words, the jury had determined the company's total enrichment by the employee's services, but did not go one step further to determine the portion of those services it had unjustly retained.

Here, the district court did not determine the total sum of McMillan's enrichment (unjust and otherwise) and then fail to offset the portion it would not be unjust for him to retain. While the district court noted evidence indicating that McMillan purchased the uninhabitable house for less than $100,000 and it credited Terry Asher's testimony that the house was worth as much as $300,000 in its livable condition, it did not award over $200,000 in restitution. Rather, it identified specific repairs that it found had been performed with an expectation of ownership and for which it found the Ashers had provided sufficient evidence of cost. The district court only awarded restitution for those repairs (in an amount less than $49,000), and no further step to determine the amount of McMillan's unjust enrichment was required.

In his remaining argument, McMillan notes that the district court relied on costs as evidence of value in its findings of fact and conclusions of law, but it did not cite *Dursteler* as authority for doing so until its order denying McMillan's motion for reconsideration. Thus, McMillan argues that the reasoning provided in the later order is nothing but a post-hoc justification for an error he claims the district court "seems to have recognized," but refused to correct. As McMillan tells it, despite the district court's explanation that it relied on costs as competent evidence of value under *Dursteler*, it actually relied on the increased market value of the house. However, the only evidence bearing on the value of the house was testimony from Terry Asher, who McMillan alleges was not competent to testify on the subject. Therefore, McMillan asserts there is no competent evidence in the record to support the district court's award and it must be vacated.

This argument is without merit. The district court explained that its award of restitution was based on specifically identified costs and the amount of the award corresponds to the sum of

those costs (except for a minor computational error discussed below). While the district court noted Terry Asher's testimony showed the value of the house was substantially increased, nothing suggests the district court relied on that testimony to calculate the amount of the award.

In sum, McMillan raised no objection to the relevance or competence of the Ashers' evidence of costs at trial, and he has offered no cogent argument on appeal why the district court erred in relying on this evidence. Therefore, we hold that the district court did not err in relying on costs to determine the amount of the award in this case.

## C. The district court miscalculated the award against McMillan by $403.29.

Finally, McMillan argues that the district court erred by awarding $4,903.29 in restitution that was not supported by the receipts the district court said it relied upon. McMillan correctly points out that the district court missed an electrical return receipt for $3.29 and made a $400 error in adding the value of shade trees listed in an estimate admitted as part of Exhibit 1. However, we disagree with McMillan's argument as to the remaining $4,500. McMillan claims that the receipt for the drywall work lists no price, and therefore the district court lacked evidence of its value. The receipt for this work is a written statement from a drywall installer acknowledging the Ashers paid him with two four-wheelers, which was admitted as part of Exhibit 1. Though no price appears on this statement, the Ashers listed the drywall work as an improvement in Exhibit 2 and noted that they paid with four-wheelers worth $4,500. Both Exhibit 1 and Exhibit 2 were admitted into evidence, and McMillan made no objection to the admission of either exhibit. McMillan's contention that no evidence demonstrates the value of the drywall work is without merit. The district court miscalculated the award by only $403.29.

## D. The Ashers are entitled to attorney fees on appeal.

Both parties seek attorney fees on appeal under Idaho Code section 12-121. Under section 12-121, we award attorney fees to the prevailing party, as a matter of discretion, if we find an appeal was "pursued, defended, or brought frivolously, unreasonably, or without foundation." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 632–33, 329 P.3d 1072, 1080–81 (2014) (quoting *Owner–Operator Indep. Drivers Assn. v. Idaho Pub. Utils. Comm'n*, 125 Idaho 401, 408, 871 P.2d 818, 825 (1994)). "We apply a '[] holistic view to examine whether the non-prevailing party argued the issues in good faith or acted without a reasonable basis in fact or law.' " *Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 468

P.3d 239, 253 (2020) (quoting *Galvin v. City of Middleton,* 164 Idaho 642, 648, 434 P.3d 817, 823 (2019).

Here, the Ashers are the prevailing party on appeal because they have successfully defended all but a small fraction of the district court's award of restitution in their favor. Therefore, we award costs to the Ashers and McMillan is not entitled to attorney fees.

Turning to the Ashers' claim for attorney fees, we find that McMillan's arguments are frivolous, unreasonable and without foundation. With regard to whether he had been unjustly enriched, McMillan's arguments ignore the well-settled principle that only an enforceable contract is a bar to equitable remedies. Moreover, in making his arguments under the (unenforceable) contract, McMillan advanced an untenable interpretation of the findings of the district court: though McMillan repeatedly claimed the district court found the Ashers were at fault for the unconsummated sale of the house, it made no such finding. Similarly, with regard to the district court's reliance on costs as evidence of value, McMillan's arguments do not meaningfully engage with applicable precedent and implausibly assert that the district court relied on Terry Asher's testimony about the value of the house. Finally, McMillan's only sound argument—that the district court erred with regard to the electrical return receipt and the value of shade trees—resulted in a minimal recovery and was combined with the meritless contention that no evidence showed the value of the drywall work paid for by the Ashers. Thus, we award attorney fees to the Ashers.

## IV. CONCLUSION

The decision of the district court determining McMillan was unjustly enriched is affirmed. The case is remanded with instruction to reduce the award of restitution against McMillan by $403.29 and to enter judgment in the amount of $48,344.91. We award costs and attorney fees to the Ashers.

Chief Justice BEVAN, and Justices BURDICK, STEGNER and MOELLER CONCUR