# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 51467

| | |
|---|---|
| NOAH GILBERT, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff-Appellant, ) | Boise, May 2025 Term |
| ) | |
| v. ) | Opinion Filed: October 3, 2025 |
| ) | |
| PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, ) ) ) | Melanie Gagnepain, Clerk |
| Defendant-Respondent. ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. James Cawthon, District Judge.

The district court's judgment is <u>affirmed</u>.

Stranch Jennings & Garvey, PLLC, *Pro Hac Vice*, Nashville, Tennessee; Amick Law Offices, Boise; Cohen & Malad, LLP, *Pro Hac Vice*, Indianapolis, Indiana, for Appellant, Noah Gilbert. Michael C. Iadevaia argued.

Hawley Troxell Ennis & Hawley LLP, Boise; Tucker Ellis LLP, *Pro Hac Vice*, Cleveland, Ohio, for Respondent, Progressive Northwestern Insurance Company. Benjamin Sassé argued.

_____

MEYER, Justice.

This appeal addresses whether an insured person may assert claims for breach of contract, unjust enrichment, and constructive fraud based on allegedly illusory underinsured motorist coverage, despite never having filed or been denied an underinsured motorist claim. Although we conclude that Noah Gilbert has standing to bring these claims, we affirm the district court's decision granting summary judgment because Progressive Northwestern Insurance Company never denied or delayed payment and Gilbert never incurred damages; therefore, no genuine dispute as to any material fact exists, and Progressive was entitled to judgment as a matter of law on all claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Noah Gilbert has held a motor vehicle insurance policy with Progressive Northwestern Insurance Company ("Progressive") since September 2021. His policy provides liability coverage

1

for one vehicle, with a limit of $25,000 per person and $50,000 per accident. Initially, Gilbert declined to add an underinsured motorist ("UIM") endorsement to his insurance policy. Since Idaho Code section 41-2502(2) requires that a rejection of UIM coverage be in writing, Gilbert signed a UIM disclosure and rejection form, which, in accordance with form language approved by the Idaho Department of Insurance, defined UIM coverage and included examples of how different types of coverage ("difference in limits" or "offset" vs. "excess") may impact an insured person's level of protection. Progressive's disclosure form explained that "UIM coverage is offered in different types by different insurers, and insurers are not required to offer more than one type of UIM coverage. The most common available type of UIM coverage is 'Difference in Limits' (or 'Offset') Coverage. Some insurers may offer 'Excess' Coverage." The form defined "Difference in Limits" or "Offset" UIM coverage as follows: "Your UIM coverage limits are reduced or eliminated by any amounts recovered from another party's insurance." "Excess" UIM coverage is defined as "Your UIM coverage limits are above and beyond what is paid by another party's insurance."

A month after first acquiring his policy, Gilbert added a UIM endorsement through the Progressive app. The UIM endorsement provided coverage of $25,000 per person and $50,000 per accident, but included an offset provision, which provided that any amount paid under the UIM endorsement would be reduced by the amount paid on behalf of the underinsured motorist. The parties dispute the dollar amount that Gilbert paid for the UIM endorsement. Gilbert states that he paid $22 per month for UIM coverage, while Progressive asserts that he paid a total of $22 for a six-month policy period. Gilbert regularly renewed his policy and still maintains motor vehicle insurance with Progressive.

Two months after this Court's decision in *Pena v. Viking Insurance Co. of Wisconsin*, 169 Idaho 730, 503 P.3d 201 (2022), Gilbert filed a putative class action against Progressive. In *Pena*, we held that when minimum-limits UIM coverage is offered, paid for, and then subsequently excluded, as the insurance company did in that case, the coverage is illusory. 169 Idaho at 736, 503 P.3d at 207. Gilbert's complaint alleged that Progressive's UIM coverage is illusory under *Pena*. Claiming that Progressive was aware the company would never pay out the UIM coverage while continuing to sell that coverage, Gilbert asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, and constructive fraud. However, Gilbert did not allege that he had ever been involved in an accident, had ever filed an

insurance claim seeking UIM benefits, or had ever been denied a claim for coverage. Gilbert's class action suit sought compensatory and punitive damages for himself and the putative class, as well as pre- and post-judgment interest, and reasonable attorney fees and costs. The putative class consisted of "[a]ll insured citizens of Idaho who, during the applicable statute of limitations, purchased an Idaho UIM policy from Progressive with UIM coverage limited to $25,000 for each person and $50,000 for each accident."

Following the completion of discovery, the district court heard argument on cross-motions for summary judgment. Gilbert claimed that the $25,000 UIM coverage he purchased was effectively worthless due to the offset provision. He argued that Progressive breached the insurance contract and the implied covenant of good faith and fair dealing by collecting premiums for UIM coverage that was illusory at the time of contracting. He claimed that the policy could never provide any meaningful benefit because it offered only the statutory minimum UIM limits of $25,000 per person and $50,000 per accident and an offset provision. On this basis, he further asserted that Progressive had been unjustly enriched by collecting premiums for coverage that failed to provide the protection it purported to offer, and that its sale of such a policy constituted constructive fraud. He also sought class certification.

Progressive opposed Gilbert's motion for class certification. In Progressive's cross-motion for summary judgment, it contended that Gilbert's claims failed because he had never filed a claim under the policy, never suffered an accident triggering UIM coverage, and had never been denied benefits. Furthermore, it emphasized that, following this Court's ruling in *Pena*, it honored the policy as excess coverage to comply with Idaho public policy and introduced evidence that, since *Pena*, it has treated the $25,000 offset UIM coverage as excess coverage. Progressive maintained that *Pena* mandated a remedy of enforcement of coverage rather than policy rescission or restitution. It argued that any assertion that the policy was void or that premiums should be refunded was contrary to the remedy prescribed in *Pena*.

After hearing oral arguments on the parties' motions, the district court sua sponte raised the issue of standing and ordered the parties to provide briefs, particularly regarding the injury-in-fact element. After considering the parties' standing arguments, the district court held that Gilbert lacked standing because he had not filed an insurance claim, been denied UIM benefits for any such claim, or otherwise established the injury-in-fact standing requirement. The court's analysis relied on *Pena*, emphasizing that unlike the insured person in *Pena*, Gilbert had not experienced a

3

denial of coverage. The court explained that, under *Pena*, Gilbert effectively already had the protection he sought because the insurance policy would be interpreted to provide excess coverage, despite the offset language in his policy. The court emphasized that the appropriate remedy for an illusory UIM policy, rather than contract rescission or a refund of premium payments, is enforcement of the insurance contract in the claimant's favor, which is compatible with public policy.

Alternatively, the district court held that Gilbert's claims for breach of contract, unjust enrichment, or constructive fraud failed as a matter of law. The district court concluded that Gilbert's breach of contract or covenant of good faith and fair dealing causes of action could not be established because Gilbert had not filed a claim, and Progressive had not denied coverage. The court explained that

> Progressive ha[d] not violated, nullified, or significantly impaired any benefit of the contract because [it] ha[d] not denied coverage. And, following the *Pena* decision, it is clear that if Gilbert had filed a claim and been denied coverage, the [c]ourt would have interpreted his UIM provision to provide excess coverage. Gilbert would have the coverage he thought he [had] bought.

The unjust enrichment claim also failed because a valid insurance contract existed between the parties and governed their relationship. Regarding constructive fraud, the district court determined that Gilbert was unable to prove an essential element—actual injury—as Progressive had never denied him coverage and would be bound by *Pena* to provide the coverage. The district court granted Progressive's motion and denied Gilbert's motion for summary judgment. Consequently, the motion for class certification was denied as moot. Gilbert timely appealed to this Court.

## II.    ANALYSIS

Gilbert asks this Court to reverse the district court's order granting summary judgment to Progressive and the district court's order denying his motion for class certification and to remand the case. As a threshold issue, we address whether Gilbert has standing; because we conclude he does, we review the merits of the parties' competing motions for summary judgment. Although Gilbert has standing, we affirm the district court's judgment in favor of Progressive.

## A.  Gilbert has standing to bring the alleged legal claims against Progressive.

The first issue we address is whether an insured person has standing to sue his insurance company for breach of contract and breach of the implied covenant of good faith and fair dealing, unjust enrichment, or constructive fraud based on alleged illusory UIM coverage even though the insured never filed a UIM claim or experienced a denial of coverage.

4

"Jurisdictional issues, like standing, are questions of law[.]" *Berglund v. Dix*, 170 Idaho 378, 384, 511 P.3d 260, 266 (2022) (quoting *Frantz v. Osborn*, 167 Idaho 176, 179, 468 P.3d 306, 309 (2020)). "This Court reviews questions of law de novo." *Farm Bureau Mut. Ins. Co. of Idaho v. Cook*, 163 Idaho 455, 458, 414 P.3d 1194, 1197 (2018) (italics omitted). Upon review, we conclude that Gilbert has satisfied the threshold standing requirements to invoke the Court's jurisdiction.

"It is a fundamental tenet of American jurisprudence that a person wishing to invoke a court's jurisdiction must have standing." *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). As we have held, standing is a threshold issue to be decided before the court may reach the merits. *Radford v. Van Orden*, 168 Idaho 287, 299, 483 P.3d 344, 356 (2021). The standing inquiry focuses not on the legal theory advanced but on whether the party has suffered an injury that is concrete, personal, and redressable. *Reclaim Idaho v. Denney*, 169 Idaho 406, 418–19, 497 P.3d 160, 172–73 (2021).

While Idaho's Constitution does not contain a "case or controversy" clause that parallels Article III of the United States Constitution, we have adopted the federal standing doctrine as a matter of prudence. *Regan v. Denney*, 165 Idaho 15, 21, 437 P.3d 15, 21 (2019). Idaho courts, therefore, look to federal precedent for guidance, including the United States Supreme Court's articulation of the three-part test for standing: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted); *Reclaim Idaho*, 169 Idaho at 419, 497 P.3d at 173 (citation omitted).

Standing is not just a requirement for pleading; it is "an indispensable part of the plaintiff's case." *Camp Easton Forever, Inc. v. Inland Nw. Council Boy Scouts of Am.*, 156 Idaho 893, 898, 332 P.3d 805, 810 (2014) (quoting *Lujan*, 504 U.S. at 561). The plaintiff bears the burden of establishing each standing element "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (quoting *Lujan*, 504 U.S. at 561). When the case reaches its ultimate disposition, whether at summary judgment or trial, standing must be demonstrated by evidence; reliance on allegations alone is insufficient. *Lujan*, 504 U.S. at 561. At the pleading stage, factual assertions generally suffice as courts accept these allegations as true to establish jurisdiction. *Id.* However, as the case advances, the burden becomes more exacting. *See id.* We have previously explained that

[a]t summary judgment "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." [*Lujan*, 504 U.S. at 561.] Standing is also an indispensable part of this Court's jurisdiction, so Idaho's summary judgment standard applies[.]

*Camp Easton Forever*, 156 Idaho at 898, 332 P.3d at 810.

Before the district court sua sponte raised the standing issue, each party completed discovery and submitted opposing motions for summary judgment. Consequently, at the summary judgment stage in the proceedings, Gilbert cannot rest on "mere allegations" in his complaint but must instead point to factual evidence supporting his claims.

This case turns on the first requirement: injury-in-fact. To meet this requirement, a plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560 (citations omitted). A concrete injury "must be real and not abstract." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Particularization requires that the plaintiff personally experienced the harm. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Speculative or hypothetical injuries are insufficient. *All. for Hippocratic Med.*, 602 U.S. at 381.

The parties dispute the dollar amount that Gilbert paid; Gilbert states that he paid $22 per month for UIM coverage, while Progressive asserts that he paid a total of $22 for a six-month policy period. However, the parties do not dispute that Gilbert paid his premiums for the UIM coverage, and the amount that Gilbert paid is not material to the issues on summary judgment. *Litster v. Litster Frost Injury Laws. PLLC*, 174 Idaho 860, 876, 560 P.3d 1007, 1023 (2024) (defining "material fact" as "one upon which the outcome of the case may be different" (citation omitted)). On summary judgment, the parties introduced a copy of Gilbert's Progressive Insurance policy, showing a premium payment for the $25,000 per person and $50,000 per accident UIM endorsement. Gilbert contends that Progressive marketed and sold coverage which, due to its structure and offset language, would never realistically pay out in the event of a claim. Thus, he argues, his injury occurred when he paid for a product that would never provide the promised benefit.

Progressive maintains that Gilbert cannot demonstrate an injury-in-fact because Gilbert has not filed a claim or been denied coverage for UIM benefits. However, this conflates the merits of Gilbert's causes of action with the threshold standing analysis. Gilbert alleges an economic theory of harm—that he paid money for a product with no real-world utility. The United States Supreme

6

Court has made clear that monetary harms qualify as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) (recognizing "even a small amount of money" as an injury). Thus, payment for an allegedly illusory policy—i.e., one incapable of delivering coverage at the time of contracting—qualifies as a concrete and particularized harm.

Gilbert's injury is particularized because he purchased the policy, paid the premium, and asserts the policy lacked enforceable utility at the time Progressive issued the policy containing a UIM endorsement. It is actual, not hypothetical, because the injury materialized upon the premium payment under his theory not upon a denied claim or future accident. This economic loss, coupled with the theory that Progressive sold an illusory policy, satisfies the requirement of an injury-in-fact. The argument that Gilbert's harm is speculative because it depends on a future accident mischaracterizes the nature of his claim: he does not seek coverage for a hypothetical injury; he seeks reimbursement for premiums paid for an allegedly empty promise to provide UIM coverage.

Our conclusion is consistent with persuasive authority from federal circuit courts that have found standing based on similar economic injuries stemming from the purchase of allegedly void or illusory insurance policies. *See, e.g.*, *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574–75 (2d Cir. 2018) (plaintiff alleged a "concrete, economic injury" from paying "premiums for disability and medical expense insurance policies that are illegal"); *Graham v. Catamaran Health Sols. LLC*, 940 F.3d 401, 408 (8th Cir. 2017) (plaintiff alleged "compensable economic injury" from paying premiums on a group insurance policy that was "void *ab initio* due to non-compliance with state law" governing permissible and qualifying group insurance policies); *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1147–48 (11th Cir. 2019) (plaintiff alleged a cognizable injury by paying premiums on an illusory policy).

Gilbert also established the two remaining standing requirements. Although the second and third standing elements overlap, they are distinct insofar as causation focuses on the connection between the defendant's conduct and the injury, while redressability addresses the connection between the injury and the requested remedy. *See Idaho State Athletic Comm'n ex rel. Stoddard v. Off. of the Admin. Rules Coordinator*, 173 Idaho 384, 395, 542 P.3d 718, 729 (2024). The second standing element—causation—requires a "fairly traceable causal connection between the claimed injury and the challenged conduct." *Id.* (quoting *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d at 761, 766 (2015)). This element "examines the connection between the alleged

misconduct and injury." *Tidwell v. Blaine County*, 172 Idaho 851, 864, 537 P.3d 1212, 1225 (2023) (citation modified) (quoting *Tucker v State*, 162 Idaho 11, 24, 394 P.3d 54, 67 (2017)). Here, the causal connection is straightforward: Progressive issued a policy with offset language; Gilbert purchased the policy and paid premiums; he now asserts that those payments were extracted for a coverage promise that was illusory from the outset. The economic injury that Gilbert asserts—the payment of premiums for alleged illusory UIM coverage—is traceable to Progressive's decision to market and sell a policy that Gilbert alleged was incapable of delivering the coverage it purported to provide. This direct relationship satisfies the causation requirement.

The final standing element requires demonstrating that there is a likelihood that a favorable decision will redress the injury, rather than merely speculating that it will. *Idaho State Athletic Comm'n*, 173 Idaho at 395, 542 P.3d at 729. The redressability requirement "ensures that a court has the ability to order the relief sought, which must create a substantial likelihood of remedying the harms alleged." *Idaho State App. Pub. Def. v. Fourth Jud. Dist. Ct.*, 173 Idaho 214, 225, 540 P.3d 311, 322 (2023) (quoting *Emps. Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 777, 405 P.3d 33, 36 (2017)). Here, Gilbert's alleged injury would likely be redressable by a favorable court decision. Gilbert sought the return of premiums paid for coverage that, in his view, was illusory at the time of purchase. If he were to prevail on the merits, he may be entitled to relief. That is sufficient to meet the final standing requirement of redressability.

Accordingly, we hold that Gilbert has standing to pursue his claims. Our decision regarding Gilbert's standing does not address the merits of his claims but simply determines whether he has standing to bring them. We turn now to the parties' summary judgment motions.

## B. The district court did not err in entering summary judgment on the breach and fraud claims in Progressive's favor because Progressive never denied nor delayed payment and Gilbert never incurred damages.

When this Court reviews a trial court's ruling on a motion for summary judgment, we apply "the same standard used by the trial court originally ruling on the motion." *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017) (citation omitted). Under the Idaho Rules of Civil Procedure, summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and that party "is entitled to judgment as a matter of law." I.R.C.P. 56(a). The non-moving party that opposes "summary judgment must bring to the trial court's attention evidence that may create a genuine issue of material fact . . . ." *Gordon v. U.S. Bank Nat'l Ass'n*, 166 Idaho 105, 121, 455 P.3d 374, 390 (2019) (alteration in original)

(quoting *Beus v. Beus*, 151 Idaho 235, 239, 254 P.3d 1231, 1235 (2011)). The "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, . . . or [by] showing that the materials cited" demonstrate that a genuine factual dispute exists. I.R.C.P. 56(c)(1).

"If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *Krinitt*, 162 Idaho at 428–29, 398 P.3d at 161–62 (citation omitted). The standard of review remains unchanged if the parties have filed cross-motions for summary judgment. *Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016) (citing *Shawver v. Huckleberry Ests., L.L.C.*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004)).

1. *Gilbert cannot establish his breach of contract or breach of covenant of good faith and fair dealing causes of action without showing that Progressive denied or delayed payment on a claim.*

Gilbert's central theory is that Progressive breached its contractual and implied duties owed to him and other policyholders by knowingly selling and collecting premiums for UIM coverage that was illusory. Gilbert asserts that Progressive's bad faith exists in crafting insurance policies intended to mislead policyholders. Progressive argues that a bad faith claim only arises after there is a denial or withholding of payment on a claim; thus, it had no duty to perform before Gilbert filed a claim for UIM coverage stemming from an accident with an underinsured motorist, and as a result, Gilbert cannot establish that Progressive breached the insurance policy's implied covenant of good faith and fair dealing.

> An insurance contract is often defined as a bargain under which the insured [person] agrees to pay a specified premium and, in exchange, the [insurance company] agrees to indemnify the insured [person] against losses that are within the terms of the policy, but that arise from events which are unknown and contingent when the policy is issued.

Richard A. Lord, 16 *Williston on Contracts* § 49:2 (4th ed. 2025) (footnote omitted); *see also* I.C. § 41-102 ("'Insurance' is a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies."). There is an implied duty of good faith and fair dealing inherent in every insurance policy. *Rizzo v. State Farm Ins. Co.*, 155 Idaho 75, 84, 305 P.3d 519, 528 (2013); *see also* I.C. § 41-113(2) ("The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."). It is well-

9

established that an insurance company owes "to the insured some duty in this respect." *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 96, 730 P.2d 1014, 1016 (1986). "The covenant requires that 'the parties perform in good faith the obligations imposed by their agreement,' and a violation of the covenant occurs only when 'either party . . . violates, nullifies or significantly impairs any benefit' of the contract." *Rizzo*, 155 Idaho at 84, 305 P.3d at 528 (alteration in original) (quoting *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991)). That is why, in addition to a breach of contract action, an insured person has an independent action when the duty of good faith and fair dealing is breached, which this Court recognizes as the tort of bad faith. *White*, 112 Idaho at 97, 730 P.2d at 1017; *see also Cummings v. Stephens*, 157 Idaho 348, 359, 336 P.3d 281, 292 (2014) ("This Court has created a tort of bad faith applicable to insurance companies. That tort is not a tortious breach of contract, but a breach of a duty imposed as a consequence of a contractual relationship."); *Inland Grp. of Cos., Inc. v. Providence Wash. Ins. Co.*, 133 Idaho 249, 255, 985 P.2d 674, 680 (1999) ("The duty to act in good faith exists at all times during the settlement process. Furthermore, a claim for breach of the obligation of good faith and fair dealing is independent of a technical breach of the obligation to pay."). This tort-based action is separate from an action on the contract. *See Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 322, 233 P.3d 1221, 1244 (2010).

To recover on a bad faith claim, an insured person must establish four elements: (1) the insurance company intentionally and unreasonably denied or delayed payment; (2) the insured person's claim was not fairly debatable; (3) the insurance company's denial or delay was not the result of a good faith mistake; and (4) the resulting harm was not fully compensable by contract damages. *ABK, LLC v. Mid-Century Ins. Co.*, 166 Idaho 92, 103, 454 P.3d 1175, 1186 (2019) (citation omitted). "Fundamental to the claim of bad faith is the idea that there must be coverage of the claim under the policy." *Id.* (quoting *Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 178, 45 P.3d 829, 834 (2002) (explaining that a plaintiff has the burden of establishing coverage under a policy to prevail on a bad faith claim even if the claim is paid)).

In this case, it is undisputed that Gilbert never submitted an insurance claim to Progressive for UIM benefits. Absent the denial or delay of payment on a UIM claim, Gilbert cannot establish a breach of contract or a bad-faith tort claim against Progressive. Therefore, we affirm the district court's summary judgment dismissing Gilbert's cause of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

*2. Gilbert cannot establish damages, an essential element of fraud and constructive fraud.*

Gilbert's fraud and constructive fraud claims cannot survive summary judgment because he failed to demonstrate damages, an essential element of both causes of action. Gilbert asserts that Progressive's policy excluded coverage in a deceptive manner, amounting to misrepresentations about the nature of his UIM coverage, which he relied on when purchasing the policy. Progressive maintains that a fraud claim is unsuccessful without showing an injury, and, in addition, constructive fraud requires proof of damages, which Progressive asserts is absent.

To prevail on a fraud claim, the party alleging the claim must establish nine elements:

> (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury.

*Thurston Enters., Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 720, 435 P.3d 489, 500 (2019) (quoting *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 600, 150 P.3d 288, 293 (2006)). "An action [for] constructive fraud exists when there has been a breach of a duty arising from a relationship of trust and confidence, as in a fiduciary duty." *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010) (quoting *Hines v. Hines*, 129 Idaho 847, 853, 934 P.2d 20, 26 (1997)). If a plaintiff alleging constructive fraud establishes that there was a breach of duty arising from a relationship of trust and confidence, the plaintiff is not required to prove elements four and five—the speaker's knowledge and intent. *See Country Cove*, 143 Idaho at 601, 150 P.3d at 294. However, the party is still required to prove the remaining seven elements of fraud. *Id.* at 600, 150 P.3d at 293.

We have previously stated, "to secure relief on a basis of fraud, the party seeking redress must have been damaged, injured or harmed" because of the alleged fraud. *Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 144, 481 P.3d 78, 98 (2021) (quoting *April Beguesse, Inc. v. Rammell*, 156 Idaho 500, 510, 328 P.3d 480, 490 (2014)). In other words, a false representation that does not result in any injury or harm is not actionable. *Id.* Because we can resolve Gilbert's fraud and construction fraud claims on the issue of damages, we start and end there.

Here, Gilbert contends that his damages consist of the premiums he paid to Progressive for UIM coverage. He argues that the coverage he paid for would never have materialized in the event that he had a covered loss. Importantly, however, he never experienced a covered loss that necessitated submitting an insurance claim. Put another way, he was never in an accident with an

at-fault driver who carried minimum bodily injury limits, while Gilbert sustained injuries that exceeded those limits. The record is devoid of evidence that the coverage Gilbert purchased was denied when needed, as he never submitted an insurance claim to Progressive. Without an insurance claim, Gilbert cannot establish damages, an essential element of fraud and constructive fraud.

We affirm the district court's decision to dismiss Gilbert's claims of fraud and constructive fraud.

## C. The district court did not err in granting summary judgment on Gilbert's unjust enrichment claim.

As an alternative cause of action, Gilbert alleged that Progressive was unjustly enriched. "Unjust enrichment is an equitable remedy." *Stevenson v. Windermere Real Est./Cap. Grp., Inc.*, 152 Idaho 824, 829 n.4, 275 P.3d 839, 844 n.4 (2012) (emphasis omitted). "This Court reviews rulings on equitable remedies for an abuse of discretion." *Asher v. McMillan*, 169 Idaho 701, 705, 503 P.3d 172, 176 (2021) (quoting *Wadsworth Reese, PLLC v. Siddoway & Co., PC*, 165 Idaho 364, 372, 445 P.3d 1090, 1098 (2019)). We review a district court's discretionary decisions under the four-part standard set out in *Lunneborg v. My Fun Life*, 163 Idaho 856, 421 P.3d 187 (2018). Under the *Lunneborg* standard, we ask whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." 163 Idaho at 863, 421 P.3d at 194 (citation omitted).

We conclude that the district court acted within the bounds of its discretion and consistently with the applicable legal standards and reached its decision through the exercise of reason. Before addressing Gilbert's unjust enrichment claim, the district court determined that, like the Viking insurance policy in *Pena v. Viking Insurance Co. of Wisconsin*, 169 Idaho 730, 503 P.3d 201 (2022), Progressive's insurance policy was illusory. The court explained:

> Reading the policy as a whole, the UIM coverage offered by Progressive is entirely illusory because Idaho requires all drivers to possess $25,000 in 3rd party liability insurance coverage, yet a vehicle is only "underinsured" if it is subject to a liability bond meeting Idaho's minimum limit — an impossibility. Although Progressive's Declarations page shows customers they [sic] have purchased UIM coverage of $25,000, the plain language of the policy extinguishes such coverage thereby creating the illusion of coverage. Such illusory insurance coverage violates public policy.

Then, the district court relied on *Mannos v. Moss*, 143 Idaho 927, 155 P.3d 1166 (2007), to decline consideration of Gilbert's claim because a contract remedy existed. The court also relied on *Scottsdale Insurance Co. v. Universal Crop Protection Alliance, LLC*, No. 07-3526, 2008 WL 11411782, at *1 (D. Minn. Oct. 23, 2008), an unpublished federal district court case, in which the court denied a motion filed by an insured business seeking to amend its answer and counterclaim to add a claim for unjust enrichment to obtain a refund of insurance premiums. In that case, the court explained that "the proposed amendment is futile for two reasons: first, unjust enrichment cannot be granted in the face of a valid contract; second, because illusory coverage cannot serve as a basis for contract invalidation, it cannot support a claim of unjust enrichment." *Id.*, at *2.

Gilbert argues the district court erred in granting summary judgment on his unjust enrichment claim, asserting that he received no meaningful benefit for the premiums paid, and that Progressive's retention of those premiums is inequitable. In response, Progressive contends that Gilbert has an adequate legal remedy—namely, enforcement of the contract—and that his claim rests on misstatements of fact. Alternatively, Progressive urges affirmance on the basis of unclean hands, citing Gilbert's failure to disclose his delivery work for UberEats and DoorDash, which would invalidate the UIM coverage, according to Progressive.

Unjust enrichment arises from a contract implied-in-law, not from the intent of the parties, but as a remedy imposed to achieve equity. *See Turcott v. Est. of Bates*, 165 Idaho 183, 190, 443 P.3d 197, 204 (2019). As a general rule, "[e]quitable claims will not be considered when an adequate legal remedy is available." *Iron Eagle Dev., LLC v. Quality Design Sys., Inc.*, 138 Idaho 487, 492, 65 P.3d 509, 514 (2003). Thus, an express contract typically precludes equitable relief. *Id.* Despite that, "[a]n award for unjust enrichment may be proper even though an agreement exists." *Bates v. Seldin*, 146 Idaho 772, 776, 203 P.3d 702, 706 (2009). In *Bates*, we clarified the relationship between unjust enrichment and express contract:

> Appellants argue that the doctrine of unjust enrichment is inapplicable where a contract exists between the parties. Appellants' analysis, however, is incorrect. An award for unjust enrichment may be proper even though an agreement exists. The existence of an express agreement does not prevent the application of the doctrine of unjust enrichment. Only when the express agreement is enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract.

13

*Id*. at 776–77, 203 P.3d at 706–07 (citations omitted). To the extent the district court determined that the existence of a contract necessarily precludes the availability of equitable remedies, the conclusion was erroneous.

Nevertheless, the district court correctly concluded that unjust enrichment was inapplicable in this case. "[R]estitutionary remedies are subordinate to contractual remedies." *Asher*, 169 Idaho at 707, 503 P.3d at 178. Restitution is not warranted simply because a transaction appears "unfair, unwise, or unbalanced. Rather, unjust enrichment is an 'enrichment that lacks an adequate legal basis; it results from a transaction that the law treats as ineffective to work a conclusive alteration in ownership rights.'" *Id.* (quoting Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (A.L.I. 2011)). Typically, a contract supersedes "a remedy in restitution because the contract provides an 'adequate legal basis' for the retention of a benefit conferred." *Id.* (citing Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (A.L.I. 2011)). However, this applies only to enforceable contracts; an unenforceable contract does not definitively alter ownership rights and does not provide a basis to supersede a remedy in restitution. *See id.* (citation omitted). Therefore, where a plaintiff has conferred a benefit under a contract that he cannot enforce, the question is whether the defendant's retention of the benefit would be unjust. *Id.* (citing Restatement (Third) of Restitution & Unjust Enrichment §§ 31–36 (A.L.I. 2011)).

Importantly, the district court did not void the entire insurance policy. Instead, consistent with *Pena*, certain provisions within the UIM coverage—specifically, those that rendered the coverage illusory—were determined by the court to be unenforceable. When a provision violates public policy, courts will strike only that provision and enforce the rest of the policy, if doing so preserves the statutory purpose and the insured's legitimate expectations. *See, e.g.*, *Pena*, 169 Idaho at 740, 503 P.3d at 211; *Martinez v. Idaho Cntys. Reciprocal Mgmt. Program*, 134 Idaho 247, 252, 999 P.2d 902, 907 (2000); *Williams v. Cont'l Life & Accident Co.*, 100 Idaho 71, 74, 593 P.2d 708, 711 (1979). As we explained in *Pena*, "[j]ustice and fairness require us to enforce the contract . . . while prohibiting [the insurer] from relying on its definitions, exclusions or offset provisions." 169 Idaho at 740, 503 P.3d at 211 (internal quotation marks omitted) (quoting *Martinez*, 134 Idaho at 253, 999 P.2d at 908). The remedy lies in enforcing the insurance policy, as this Court held in *Pena*, and as Progressive acknowledges. As such, Gilbert's remedy is not in restitution, but in enforcement.

Here, Gilbert has not filed a claim for UIM benefits. Nevertheless, under *Pena*, *Martinez*, *Williams*, and the Restatement, Gilbert retains the right to do so and to seek the very coverage he believed he had purchased—should he ever have a claim for UIM benefits. Under these circumstances, the district court acted within its discretion to determine that restitution is neither appropriate nor equitable. Since an enforceable contract exists and provides a legal remedy, Gilbert's alternative claim for unjust enrichment must fail.

Accordingly, we affirm the district court's order granting summary judgment in favor of Progressive on Gilbert's unjust enrichment claim.

### III.   CONCLUSION

Although Gilbert had standing to bring his claims, his claims fail on the merits. We affirm the district court's judgment in favor of Progressive. We award Progressive costs on appeal.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.